The opinion of the Court was delivered by
Pocino, J.
Plaintiffs, as third possessor's of several tracts of land, formerly part of a larger tract owned by S. W. Downs, are seeking, by injunction, to arrest the sale of their property, seized under executory process at the instance of the Citizens’ Bank, under a stock loan mortgage, granted by said Downs, when he was the owner of said large tract of land.
In the case of the Citizens’ Bank vs. S. W. Downs et al., in which the order of seizure and sale complained of issued in March, 1879, the plaintiffs in this suit, defendants in the other, had taken an appeal to this Court, which maintained the executory process, in an elaborate opinion, in which is found a full and complete statement of facts, and a history of the claim urged by the Citizens’ Bank, under the law which incorporated that institution, and endowed it with unusual powers and prerogatives.
That opinion, rendered in 1879, by our immediate predecessors, to be found in the Opinion Book of the Court at this place, p. 536, has been of great assistance to us in the consideration and determination of the numerous points raised in the present case, which are ten in number, and are substantially as follows :
1. That there were two tracts mortgaged, viz: that owned by them, the original Downs’ Home Place and the Island Placo; that both were described in the Bank’s petition for the order of seizure and sale, and 227 shares of stock, alleged to be pledged, and that the clerk, in the writ, had only directed the seizure aud sale of the Downs’ Home Place, and 170 shares of the stock.
2. They deny that there is or over has been any mortgage to secure the six notes, bonds or obligations, or that said mortgage has ever been registered in Ouachita; and that if any such mortgage exists, they are third possessors without notice, and not hound.
3. That the notes are only an ordinary debt of Gen. Downs.
*1000 4. No writ of seizure and sale can issue on a stock mortgage.
5. By permitting the sale of the Arpen Tract, a part of the Island, property originally mortgaged, they released all the other property from liability for their claims.
6. That one-half the loan was secured by the mortgages on the Downs’ Home property, and that has been long since extinguished by Downs’ payments.
7. ■ That the Bank had no right to declare Downs in default, and charge him with ten per cent., etc. j that Downs was in the Confederate lines, etc.
8. That it was merged into judgment in 1868, and prescribed by ten years.
9. That the clerk had no right to change the terms of the writ from the order of seizure and sale, and direct less to be seized than the Judge had ordered.
10. Prescription against the calls duein 1873,1876 and 1878, of three, five and ten years.
First and Ninth. The first and ninth grounds, presenting one and the same point, will be considered together.
The record shows, that by means of two different contracts, Downs acquired two hundred and twenty-five shares of the Citizens’ Bank stock, and that in another act, by himself and his planting partner, he acquired seventy-five more shares; that the stock purchased by him individually, was secured by mortgage on the property now owned by plaintiffs in this suit, and the other stock was secured on other lands owned by the partnership. After the dissolution of the partnership, Downs remained the owner of 300 shares, of which 225 were secured on his Home Place, and the balance, (75) on the former partnership property, known as the Island property.
Under the charter of the Bank, and as amended by subsequent legislation, his shares were reduced to 227, affecting his property in the proportion of one-fourth on the Island Place, and three-fourths on the Home Place.
During the years 1837, 1833 and 1839, while Downs owned 243 shares of stock, he exercised his right, under the charter, of obtaining loans from the Bank, which loans aggregated the sum of $11,190, represented by six notes of various amounts, and which were, by payments, conformably to the charter, reduced to $5,818.60, to enforce the payment of which balance the executory process herein enjoined was resorted to by the Bank.
Under the law, the contract and the charter, the Bank was entitled to the seizure of all the tracts of land subject to its mortgage, as ordered in the order of seizure and sale, and as decided by our imme *1001 diate predecessors, in the decision on the appeal above referred to. Holding- such an order, a seizing creditor lias the undoubted legal right to direct and control its execution, and to restrict the first levy to a portion only of the lands ordered to be seized by the order of the Judge.
If Downs were living, and yet the owner of these several tracts of land, he certainly could not complain that all of the mortgaged prop; erty had not been seized. Gaiennie vs. Questi, 3 La. 434.
It is difficult to conceive what greater rights have been acquired by the present owners, holding under his titles, subject to the mortgages existing previous to their purchase.
The objection that the seized debtors are not given all the credits to which they claim to be entitled, cannot justify an injunction of the entire seizure, especially as the evidence fails to show, to our satisfaction, that the seizing creditor had failed to allow them credit for all sums paid by their veudor and his author.
The act of the clerk, in compliance with the seizing creditor’s request, in directing the sheriff to seize less property than the order of seizure and sale called for, cannot be considered as an attempt to alter or change the order of the Judge, and is far from presenting an instance of “ a monstrous usurpation of authority,” as charged by plaintiffs’ counsel. In so doing, the clerk merely carried out the legal intention of the seizing creditor.
Second. Under the charter of the Rank, it is specially stipulated that the stock nnjj.'tgage required of all the shareholders, shall stand as full security for the loan or loans, and the interest thereon, which stockholders may obtain from the institution; and hence, it required no special act of mortgage to create the contemplated security for stock loan notes, which were, by notarial act, identified with the original act of stock mortgage.
It is now judicially settled, that the inscription of the act or acts of mortgage, in which it was stipulated that the stockholder shall be entitled to a credit equal to one-half of the total amount of his stock, is sufficient to create the loan mortgage, even as to third parties. Charter, Sec. 11; 2 An. 249 ; 3 An. 112, 063.
Third. The notes executed by Downs, under those circumstances, became, for those reasons, stock loan notes, and are secured by the mortgage stipulated in the charter; and it is, therefore, erroneous to charge that they were ordinary debts of Downs.
Fourth. We know of no law which deprives the corporation holding stock, or stock loan mortgages, represented by notes, identified by authentic acts, with a previous authentic act of mortgage, of the benefit of the law authorizing executory process, in the enforcement of *1002 ■a claim secured by an act importing a confession of judgment. Hence, we see no merit in this objection.
Fifth It appears from the record, that the “ Arpen Tract ” was formerly owned by the planting partnership of Downs & Brigham, and that it was included iu the mortgage to secure the stock purchased by ■'said partnership.
In the cases of Rind vs. Fluker, 22 An. 482, and of the Citizens’ Bank vs. Fluker, 23 An. 567, we are informed that the stock loan mortgage of 1839, affecting this tract of laud, was extinguished quoad this tract, by a judicial sale made a,t the instance of the Bank, at which sale the property brought a price exceeding the amount of tlie loan as it then stood. We are at a loss, therefore, to conceive how the Bank, in renouncing a claim extinguished under the law, could be construed as thus releasing all the other property mortgaged in its favor for the security of its claims. This 2>oint is reviewed and fully dist>osed of in the case quoted from Opinion Book, p. 536.
Sixth. A mere ins2Jection of the notes in suit, discloses the fact that the .payment of all six was secured by mortgage on Downs’ Home Place, and that three of them were additionally secured by mortgage on the Island Place. Hence, plaintiffs are manifestly in error in asserting that only half of the loan was secured on the lands which they now hold.
Seventh. Under the charter of the Bank, Sec. 11, it was expressly provided, that if any debtor, under a stock loan, should fml, or neglect, or refuse to pay the proportion of the capital and interest, as the same should become due and payable, then and in that case, the whole debt, capital and interest, inay be considered as due, and payment thereof demanded and enforced according to lawand by Section 24, ten per cent, on the loan was the rate of interest fixed; and it is elementary that this law was a part of Downs’ contract with the corporation. Hence, on the first of January, 1862, at the maturity of his •loan notes, his failure to ]>ay the stipulated instillment and interest, ■operated, of itself, a forfeiture of his right to renew under the charter.
Tlie argument that, by reason of the possession of New Orleans by the United States military authorities, which, as history informs us, occurred only at the end of April, 1862, cutoff communication between that city and the Parish of Ouachita, then under Confederate occupation, is evidently not serious, and is refuted by a mere statement of the ■proposition.
Fighth. The objection, that by executory 2U’ocess issued on this claim -in September, 1868, not followed by execution until the present order was granted in March, 1879, the stock loan was merged into a judgment, *1003 by reason of which it was extinguished by the prescription of ten 3rears, involves the proposition that an order of seizure and sale is a judgment in the full and legal sense of the term. It would be difficult to conceive of a more absolute legal fallacy, and an examination of the authorities cited in its support by plaintiffs’ counsel, satisfies us that this legal heresy finds no foundation in our jurisprudence. 12 M. 695 ; 2N. S. 32; 6 An. 446.
To the assertion that “ every element of a judgment enters into the executory process," the legal mind suggests a ready and easy answer : that the executory process lacks the following elements of a judgment:
1. It is not preceded by citation, the foundation of a judgment.
2. It creates no issue.
3. It decides no issue, and requires no answer or no default.
4. It adjudicates to the plaintiff no right which is not secured by* his notarial act, nor deprives him of any thus secured.
5. Its inscription in the mortgage office will, therefore, operate no judicial mortgage.
6. If the property mortgaged, and seized and sold under it, does not bring a price sufficient to satisfy the amount of the claim, the creditor cannot issue execution on such balance without first obtaining judgment thereon, contradictorily with his debtor.
7. It cannot support the plea of res judicata or Us pendens.
Other differences could be enumerated, but it would be an idle task, as we consider the point well settled in our jurisprudence, which recognizes in such orders but one element of a judgment, namely, the right of appeal, which can be taken either from the order of the Judge or from his refusal to grant the process. 16 La. 254, Harvard vs. Voorhies; 13 An. 256, Riley vs. Christie; 28 An. 186, Rousseau vs. Bourgeois ; 32 An. 977, State ex rel. Wise vs. Taylor, Judge.
■ We, therefore, conclude that the ten year prescription on judgments cannot avail plaintiffs in this case.
The plea of prescription of three and five .years to the contributions called for under acts of the legislature, seems to be abandoned on appeal, and is absolutely untenable, under the amendments to the charter.
After an exhaustive investigation of the evidence, and a mature consideration 'of the numerous obstacles interposed b3r plaintiffs to the collection by the Bank of a just and valid claim, protected by equity as well as law, we reach the conclusion that the judgment of the District Court, dissolving the injunction sued out by plaintiffs in this case, is righteous, legal and correct.
Judgment affirmed.